### RIDGWAY DYNAMO & ENGINE CO. v. PHŒNIX IRON WORKS.

(Circuit Court, W. D. Pennsylvania. July 28, 1908.)

#### No. 47.

PATENTS—ANTICIPATION—GOVERNORS FOR STEAM ENGINES.

The first six claims of the Begtrup patent, No. 387,205, for a governor for steam engines are void for anticipation by the Penney patent, No. 322,637, and the first six claims of the Begtrup patent, No. 536,505, also for a governor, are void for anticipation by the Rites patent, No. 534,579.

In Equity. Suit for infringement of letters patent No. 387,205, issued August 7, 1888, and No. 536,505, issued March 26, 1895, both granted to Julius Begtrup for steam engine governors. On final hearing.

Fred. H. Ely ( R. A. Parker, of counsel), for complainant.

J. Snowden Bell, Thomas W. Bakewell, and Clarence P. Byrnes, for respondent.

BUFFINGTON, Circuit Judge. This case concerns the governors of steam engines. The old type of governor, consisting of two swinging balls revolving in horizontal planes on a vertical spindle, responded so quickly to variations in speed as to work with jerks. This resulted in what was known as "racing." To obviate such objection, inertia governors were devised, and to this class the patent in suit belongs. This general type has a centrifugal-acting weight connected to and rotating with the engine shaft. As speed increases, the centrifugal force causes the weight to move outwardly, and when it slackens to move inwardly. The weight is so connected with the valve governing the steam supply to the cylinder as to vary the supply thereof, automatically furnishing more steam as the speed decreases, and less as it increases. Of this type the patents in suit were improvers, not pioneers. The prior patent to Penney, No. 322,637, is fairly illustrated by this drawing:

—wherein the eccentric, C, is pivoted on an axis, $C^2$, which is not coincident with the axis of the driving shaft and is connected, as shown in Fig. 1 of the patent, by a rod, D, and a stud, $C^3$, with centrifugal weights, E and F, counterbalanced by an intermediate spring, G. Rigidly connected to the eccentric is a counterweight, whose function Penney thus describes:

"The eccentric's counterweight assists the centrifugal balls and the spring in maintaining uniformity of engine speed by its tendency to preserve its own velocity under momentary changes in the speed of the crank-shaft, due to variations in the steam pressure or the load put upon the engine. Under an increase of speed of the crank-shaft this counterweight, C', lags behind somewhat for the time being, and causes a shifting of the eccentric so as

to increase its eccentricity, and consequently cut off steam earlier, while under a decrease of speed of the crank-shaft the said counterweight outruns the other parts somewhat for the time being and shifts the eccentric so as to cut off steam later. This incidental function of the counterweight, C', is so desirable that I make its heft adjustable, as before described. so that it may be loaded to foster this function, somewhat at the expense of its function of balancing the eccentric. The best practical heft of this counterweight for any given engine and speed can be readily determined by trials."

In his first patent in suit, No. 387,205, Begtrup, the patentee, differing from his prior patent, No. 326,092, wherein "the eccentric and momentum or inertia wheel or mass are separate parts, each one having its own pivot of oscillation," made "the eccentric integral with the inertia wheel either cast on it or securely fastened to it by bolts, screws, or rivets, or the inertia wheel and eccentric both rigidly secured to a common pivot shaft journaled in the disk or pulley upon which the governor is mounted, so that the said common pivot-shaft forms a rigid connection between eccentric and inertia wheel." The device is shown in the accompanying cut:

This dead weight, called by Penney a "counterweight" and by Begtrup an "inertia mass, which I preferably give the shape of a wheel," but by both integrally fastened to the eccentric, seems to us to perform the same function in both. Indeed, this seems to be conceded by complainant's expert, who, while asserting that Penney's counterweight is not an inertia weight, yet says:

"This counterbalance, like all counterbalances, necessarily has weight and inertia, and as this inertia happens to act in the helpful, instead of the harmful, direction. it would have incidentally a beneficial influence, and that incidental beneficial influence is recognized in the Penney patent in which it is stated: 'This incidental function of the counterweight, C', is so desir-

able that I make its heft adjustable, as before described, so that it may be loaded to foster this function, somewhat at the expense of its function of balancing the eccentric.'"

He also concedes that if the word "inertia" and the phrase "substantially described" are excepted, the six claims of Begtrup's patent here in controversy apply to and are descriptive of Penney's device. We have been unable to find in such expert testimony any sufficient reason for giving to the inertia mass, or the preferable form of an inertia wheel of Begtrup's device, any different significance, or, when its inertia is overcome, any different functional effect from that exerted by Penney's counterweight. In both devices the inertia of the weight contributes to preserve uniformity of speed and the centrifugal force of the weight to selections of speed, and they both use centrifugal force and the inertia of an inertia mass or counterweight for the conjoint purpose of selecting and maintaining speed uniformity. Such being the case, it follows that the six claims in question of Begtrup's patent, No. 387,205, are void.

Turning next to Begtrup's patent, No. 536,505, the first six claims of which are here involved, we note that the general principles thereof are found in Penney's prior patent, No. 322,637, and Begtrup's prior patent, No. 387,205. Its novelty therefore is confined to structural details. As to the claims in suit, complainant's expert concedes they are descriptive of the device shown in Rites' patent, No. 534,579. His testimony is as follows:

"XQ 19. Referring now to the second Begtrup patent, No. 536,505, is it not a fact that claim 2 thereof applies to and is descriptive of the construction show in Fig. 3 of the Rites patent, No. 534,579, dated February 19, 1895? A. I think so. XQ. 20. Do you make the same answer with reference to claims 3, 4, 5, and 6 of the Begtrup patent, No. 536,505? Are they and each of them descriptive of the apparatus shown in Fig. 3 of the Rites patent, No. 534,579? A. I should say yes, adding that, as regards claim 3, my understanding of Fig. 3 of the Rites patent, is: The left-hand end of the inertia weight is the heavier end; in other words, that if a line be dropped from the center of pivot, 4, to the center of the shaft, the center of gravity of the weight will be always to the left of that line."

We herewith reproduce in substantial form the devices shown, Fig. 1 of Begtrup's and Fig. 3 of Rites' patent:

They are practically the same thing. Rites' pivot, marked 4, is C of Begtrup; Rites' weight, 7, is Begtrup's E; Rites' eccentric, 5, is Begtrup's G; and the six claims of Begtrup here in controversy are descriptive of this Rites' device, as are also some of the claims in the interference proceeding between Rites and Begtrup. That proceeding resulted in a decision in Rites' favor, to whom a patent, applied for in advance of Begtrup, issued.

In view of these facts, we are constrained to hold the claims in controversy in the present case, which are descriptive of Rites' device, are invalid.

Let a decree be drawn dismissing this bill.